| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Elizabeth Ann Naylor aka Jan Black |
| Debtor 2 (Spouse, if filing) | Ronald Stephen Owens |
| United States Bankruptcy Court for the: _____ District of Arizona | |
| Case number | 25-BK-07596-PS |

Official Form 410S1

# Notice of Mortgage Payment Change

12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** Alliant Credit Union

**Court claim no.** (if known): NA

**Last 4 digits** of any number you use to identify the debtor's account: 8 9 2 8

**Date of payment change:**
Must be at least 21 days after date of this notice: 10/5/2025

**New total payment:** $ 1,580.61
Principal, interest, and escrow, if any

### Part 1: Escrow Account Payment Adjustment

1. Will there be a change in the debtor's escrow account payment?

   ☑ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $ _____    New escrow payment: $ _____

### Part 2: Mortgage Payment Adjustment

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?

   ☑ No
   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: _____%    New interest rate: _____%

   Current principal and interest payment: $ _____    New principal and interest payment: $ _____

### Part 3: Other Payment Change

3. Will there be a change in the debtor's mortgage payment for a reason not listed above?

   ☐ No
   ☑ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (Court approval may be required before the payment change can take effect.)

   Reason for change: Consistent with the terms and conditions of the Home Equity Line of Credit Variable Rate Note.

   Current mortgage payment: $ 1,389.02    New mortgage payment: $ 1,580.61

Official Form 410S1                    Notice of Mortgage Payment Change                    page 1

Debtor 1  Elizabeth Ann Naylor aka Jan Black                Case number *(if known)* 25-BK-07596-PS
          First Name  Middle Name  Last Name

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☑ I am the creditor's authorized agent.

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

✗ **/s/ David Petteys**
Signature

Date 9/11/2025

Print: **David Petteys**
       First Name  Middle Name  Last Name

Title **Authorized Agent for Creditor**

Company **Aldridge Pite, LLP**

Address **3333 Camino del Rio South, Suite 225**
        Number  Street

**San Diego**            **CA**    **92108**
City                     State     ZIP Code

Contact phone **(858) 750-7600**

Email **DPetteys@aldridgepite.com**

**Georgia's Own Credit Union**
100 Peachtree St
Atlanta, GA 30303

# Home Equity Line of Credit Agreement and Truth in Lending Disclosure

BORROWER 1 NAME Elizabeth Naylor
BORROWER 2 NAME Ronald Owens
PROPERTY ADDRESS 11440 N 69th St, Scottsdale, Arizona 85254
ACCOUNT NUMBER ▮

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE

**INTRODUCTION.** This disclosure contains important information about your Home Equity Line of Credit. You should read it carefully and keep a copy for your records. This Home Equity Line of Credit Agreement and Truth in Lending Disclosure will be referred to as the "Agreement.". This Agreement consists of (1) this Home Equity Line of Credit Agreement and Truth in Lending Disclosure, and (2) the accompanying Home Equity Addendum ("Addendum") which is incorporated into and becomes a part of this Agreement. The words "you," "your," and "Borrower" mean each person who signs this Agreement. The words "we," "us," "our," "Lender," and "Lender" mean the Lender whose name appears above or anyone to whom the Lender transfers its rights under this Agreement.

1. **HOW THIS LOAN WORKS.** This Agreement establishes a revolving line of credit Account ("Account"). You and the Lender anticipate that you will obtain a series of advances under this Agreement from time to time. The maximum amount you can borrow ("credit limit") is disclosed in the Addendum. It is the amount of credit you may borrow, repay all or a portion, and re-borrow subject to the terms of this Agreement.

2. **PROMISE TO PAY.** You promise to repay to the Lender, all advances made to you under this Account, plus finance charges, other applicable charges, and collection costs for which you are responsible under this Agreement. You agree to pay the minimum payment on or before the due date.

3. **JOINT ACCOUNTS.** If this is a joint Account, each of you must sign this Agreement and you will be individually and jointly responsible for the promises you make in this Agreement, including paying all amounts owed. This means that the Lender can require any one of you to repay all advances plus applicable finance charges. Unless the Lender's written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). The Lender can release one of you from responsibility under this Agreement without releasing the other(s).

4. **SECURITY INTEREST.** This Account is secured by a mortgage, deed of trust, security deed, or security agreement (the "security instrument") in your property which is described in the Addendum.

5. **PROMISES IN SECURITY INSTRUMENT.** The security instrument you sign the same day you sign this Agreement is incorporated by reference into this Agreement. You must keep all the promises you made in the security instrument.

6. **APPLICATION OF PAYMENTS.** Payments will be applied in the order the Lender chooses to any

(Continued on next page)

### SIGNATURES

By signing or otherwise authenticating below, you agree that you have read the Addendum and this Agreement and agree to be bound by the terms and conditions contained herein. You also acknowledge receipt of a copy of this Agreement, and the Home Equity Early Disclosure and handbook entitled "What You Should Know About Home Equity Lines of Credit" given to you at the time of application.

*Notice to Vermont Borrowers:* NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

NOTICE TO NEW JERSEY BORROWERS: Read this promissory note or loan agreement before you sign. Do not sign this promissory note or loan agreement if it contains blank spaces. The promissory note or loan agreement is secured by a secondary mortgage on your real property.

Borrower 1 Signature
X _(signed) Elizabeth Naylor_   5-6-24  (seal) Date
Elizabeth Naylor

Borrower 2 Signature
X _(signed) Ronald Owens_   5-6-24  (seal) Date
Ronald Owens

**LOANLINER**
HOME EQUITY SYSTEM

1

© CUNA Mutual Group 1998, 99, 2000, 01, 03, 06, 2012 All Rights Reserved

symhehtb

finance charges and other applicable charges due before being applied to your unpaid balance.

7. **CREDIT LIMIT.** You promise not to request or obtain an advance that will make your balance exceed your credit limit. Your credit limit will not be increased if you exceed your credit limit. If you exceed your credit limit, you agree to repay the excess immediately.

8. **ACCESS DEVICES.** You can obtain credit advances in any manner authorized by the Lender from time to time. Specifically, you may obtain credit advances by using Home Equity Line of Credit Checks provided to you for this Account. Your application for this Account also serves as a request to receive any additional access devices which may be available in the future in connection with this Account. The terms of this Agreement will also apply to any future access devices we issue to you for accessing this Account.

9. **COST OF CREDIT.** The finance charge is the cost you pay for credit. Unless described otherwise on the Addendum, the finance charge on each new advance begins on the date of the advance and continues until the advance has been paid in full. There is no "free ride period" which would allow you to avoid a finance charge. We figure the finance charge on your account by applying the periodic rate to the "daily balance" of your Account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your Account each day, add any new purchases or advances and subtract any payments or credits. This gives us the daily balance. The daily balance is multiplied by the applicable periodic rate and that is the finance charge owed for that day. The sum of the daily finance charge for the period identified on your periodic statement is the amount due for that period. The periodic rate and corresponding annual percentage rate are disclosed in the Addendum. Your periodic statement will also reflect your current rate.

10. **ANNUAL PERCENTAGE RATE.** The annual percentage rate for this Account includes only interest and no other costs. The Addendum shows the current interest rate as a periodic rate and a corresponding annual percentage rate. The interest rate for this Account is a variable interest rate. The Addendum explains how the variable interest rate works. If we forego an annual percentage rate increase, we may return to the full index and margin at a later adjustment subject to any rate limitations.

11. **OTHER CHARGES.** In addition to finance charges, your Account is subject to certain other charges as described in this Agreement and the Addendum. The Lender can add any of these other charges to your balance or you can pay them in cash. You may also incur other charges for the servicing of your Account. Servicing charges will be provided to you by the Servicer of your Account prior to the service being rendered. For a list of Servicing Fees, contact the Loan Servicer identified on your periodic statement.

12. **CHARGES TO YOUR ACCOUNT.** We may charge your Account to pay other fees and costs that you are obligated to pay under this Agreement or under the security instrument. In addition, we may charge your Account for funds required for continuing property insurance coverage or costs to protect or perfect our security interest in your property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your property. If you do not pay your property taxes, we may charge your Account and pay the delinquent taxes. Any amount so charged to your Account will be a credit advance. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

13. **LENDER'S RIGHTS:**

    (a) **Termination and Acceleration.** In accordance with applicable law, we can terminate your credit line and require you to pay us the entire outstanding balance in one payment, charge you certain fees, suspend additional extensions of credit, or reduce your credit limit, if any of the following happen:

    *For Wisconsin Borrowers Only:*
    (1) You fail to make a required payment when due two (2) times within a twelve (12) month period, or
    (2) Your failure to observe the terms of this Agreement materially impairs the condition, value or protection of, or our rights in, the property securing this Agreement.

    *For Iowa Borrowers Only:*
    If this transaction is subject to the Iowa Uniform Consumer Credit Code, you will be in default if:
    (1) You fail to make a payment within ten days of the time required by agreement; or
    (2) You fail to observe any other covenant of the transaction, breach of which materially impairs the condition, value or protection of or the Lender's right in any collateral securing the transaction, or materially impairs your prospect to pay amounts due under the transaction.

    *For All Other Borrowers:*
    (1) You engage in fraud or make a material misrepresentation at any time in connection with this Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition, or
    (2) You do not meet the repayment terms of this Agreement, or
    (3) Your action or inaction adversely affects the collateral for this Agreement or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the property, failure to pay taxes, death of all persons liable on the Account, transfer of title or sale of the property, creation of a senior lien on the property without our permission, foreclosure by a prior lienholder, use of the property for prohibited purposes, or taking of the property through eminent domain.

    (b) **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:
    (1) The value of the property securing this Agreement declines significantly below the property's appraised value for purposes of this Agreement. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty (50) percent and may include a smaller decline depending on the individual circumstances.
    (3) We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material change in your

financial circumstances. You are in default of a material obligation of this Agreement. We consider all of your obligations to be material. Before exercising any of our rights under this Agreement, we will mail or deliver a notice of default to you.

(4) We are precluded by government action from imposing the annual percentage rate provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(6) We have been notified by a regulatory authority that continued advances may constitute an unsafe and unsound business practice.

(7) The maximum annual percentage rate under this Agreement has been reached.

(8) *For Wisconsin Borrowers Only:* You engage in fraud or material misrepresentation in connection with the Agreement.

(b) **Change in Terms.**

(1) *For Borrowers Outside of Texas:* We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of this Agreement, or if the change is insignificant (such as changes relating to our data processing systems). We may also change the terms of this Agreement in accordance with other reasons, if stated on the Addendum. If this Agreement follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

(2) *For Borrowers in Texas:* We may make changes to the terms of this Agreement if you agree to the change in writing at that time. If this Agreement follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

14. **USE OF ACCOUNT.** You promise to use your Account only for consumer (personal, family or household) purposes.

15. **MEMBERSHIP IN CREDIT UNION.** If the Lender is a credit union, you must be a member of the credit union to obtain this Account and any credit advances.

16. **CONFLICTING INSTRUCTIONS.** You agree not to provide conflicting instructions to us regarding your Account (such as instructing us not to make credit advances to a joint borrower).

17. **PREPAYMENT AND CURTAILMENT.** You may prepay all or part of what you owe at any time without any prepayment penalty. If you make a curtailment payment, your payment will be applied towards the balance of the Account. However, there will be a holding period of ten (10) calendar days before you may draw upon the credit line in the amount equal to the curtailed amount.

18. **CANCELLATION BY YOU.** You can cancel your right to future credit advances under this Agreement, by notifying us in writing. If this is a joint Account and one of you cancels future credit advances under this Agreement, the cancellation will apply to both of you, unless the Lender gives written notice to one of you that you may continue to obtain advances. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due.

19. **TAX CONSEQUENCES.** You should consult a tax advisor regarding the deductibility of interest and charges under this Account.

20. **STATEMENT AND NOTICES.** You will be provided a periodic statement showing all transactions on your Account during the period covered by the statement. You must provide the Lender and any Loan Servicer current contact information, including but not limited to, address, phone number, and email address. Notice to any one of you will be notice to all.

21. **TRANSFER OR ASSIGNMENT.** You cannot assign your rights and obligations under this Agreement. In spite of any divorce or agreement between joint borrowers, each is responsible for the total amount owed under this Agreement. Subject to applicable law, we reserve the right to sell or transfer this Agreement to another lender, entity or person, and to assign our rights under the security instrument.

22. **UPDATING INFORMATION.** You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Account. You agree that we may obtain credit reports and appraisals at our option. You may be responsible for the cost of the appraisal.

23. **PROPERTY INSURANCE.** You promise to insure the property that secures this Account, in the amount the Lender requires, against fire and other hazards (including flood insurance as required). You may obtain property insurance from anyone you want that is acceptable to the Lender and that is authorized to do business in the state or is an eligible surplus lines insurer. You must name us or our designee as the person to be paid under the policy in the event of a loss. If we request it, you must deliver to us a copy of the policy and proof that the premiums have been paid. We have the right not to accept the insurer for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium to your balance and/or pursue any other remedies available to us.

24. **NO WAIVER.** The Lender can delay enforcing any of its rights under this Agreement without losing any of its rights.

25. **CONTINUED EFFECTIVENESS.** If the law makes any term(s) of this Agreement unenforceable, the other terms will remain in effect.

26. **DUE ON SALE.** You promise to notify the Lender immediately if you enter into an agreement to sell or transfer ownership of all or any part of the property securing this Account. If you sell or transfer ownership without first obtaining the written consent of the Lender, the Lender may exercise its rights described in the security instrument, including the right to demand immediate payment in full of all sums secured by the security instrument.

27. **THE FOLLOWING NOTICE IS REQUIRED BY CALIFORNIA LAW: TRANSFER OF THE PROPERTY.** Subject to applicable law, Lender shall

have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the property or any rights in the property.

28. **NOTICE TO GEORGIA BORROWERS.**

    (b) This is an instrument under seal.

    (c) O,C,G,A. § 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

29. **NOTICE TO UTAH BORROWERS.** This written agreement is a final expression of the agreement between you and the Lender. This written agreement may not be contradicted by evidence of any oral agreement

30. **THE FOLLOWING NOTICE IS REQUIRED BY NEW YORK LAW:** Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written note specifying the circumstances and times under which you can exercise this right.

31. **NOTICE TO WASHINGTON BORROWERS.** ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

| Georgia's Own Credit Union | Date 05/03/2024 |
|---|---|

## BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.** If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay a credit card Account automatically from your share Account or share draft Account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. you do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your statement was correct.

Georgia's Own Credit Union
ION MORTGAGE AND LENDING LLC

Albert Paul Harve[REDACTED]

5

**BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE**

Georgia's Own Credit Union
100 Peachtree St
Atlanta, GA 30303

# Home Equity Line of Credit Agreement and Truth in Lending Disclosure

BORROWER 1 NAME Sarah Owens
BORROWER 2 NAME Christian George Alfonso Navarro
PROPERTY ADDRESS 11440 N 69th St, Scottsdale, Arizona 85254

ACCOUNT NUMBER 0000101118

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE

**INTRODUCTION.** This disclosure contains important information about your Home Equity Line of Credit. You should read it carefully and keep a copy for your records. This Home Equity Line of Credit Agreement and Truth in Lending Disclosure will be referred to as the "Agreement." This Agreement consists of (1) this Home Equity Line of Credit Agreement and Truth in Lending Disclosure, and (2) the accompanying Home Equity Addendum ("Addendum") which is incorporated into and becomes a part of this Agreement. The words "you," "your," and "Borrower" mean each person who signs this Agreement. The words "we," "us," "our," "Lender," and "Lender" mean the Lender whose name appears above or anyone to whom the Lender transfers its rights under this Agreement.

1. **HOW THIS LOAN WORKS.** This Agreement establishes a revolving line of credit Account ("Account"). You and the Lender anticipate that you will obtain a series of advances under this Agreement from time to time. The maximum amount you can borrow ("credit limit") is disclosed in the Addendum. It is the amount of credit you may borrow, repay all or a portion, and re-borrow subject to the terms of this Agreement.

2. **PROMISE TO PAY.** You promise to repay to the Lender, all advances made to you under this Account, plus finance charges, other applicable charges, and collection costs for which you are responsible under this Agreement. You agree to pay the minimum payment on or before the due date.

3. **JOINT ACCOUNTS.** If this is a joint Account, each of you must sign this Agreement and you will be individually and jointly responsible for the promises you make in this Agreement, including paying all amounts owed. This means that the Lender can require any one of you to repay all advances plus applicable finance charges. Unless the Lender's written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). The Lender can release one of you from responsibility under this Agreement without releasing the other(s).

4. **SECURITY INTEREST.** This Account is secured by a mortgage, deed of trust, security deed, or security agreement (the "security instrument") in your property which is described in the Addendum.

5. **PROMISES IN SECURITY INSTRUMENT.** The security instrument you sign the same day you sign this Agreement is incorporated by reference into this Agreement. You must keep all the promises you made in the security instrument.

6. **APPLICATION OF PAYMENTS.** Payments will be applied in the order the Lender chooses to any

(Continued on next page)

## SIGNATURES

By signing or otherwise authenticating below, you agree that you have read the Addendum and this Agreement and agree to be bound by the terms and conditions contained herein. You also acknowledge receipt of a copy of this Agreement, and the Home Equity Early Disclosure and handbook entitled "What You Should Know About Home Equity Lines of Credit" given to you at the time of application.

*Notice to Vermont Borrowers:* **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**NOTICE TO NEW JERSEY BORROWERS:** Read this promissory note or loan agreement before you sign. Do not sign this promissory note or loan agreement if it contains blank spaces. The promissory note or loan agreement is secured by a secondary mortgage on your real property.

| Borrower 1 Signature | (seal) | Borrower 2 Signature | (seal) |
|---|---|---|---|
| X /s/ Sarah Owens | Date 5/3/24 | X /s/ Christian George Alfonso Navarro | Date 5/3/24 |

**LOANLINER** HOME EQUITY SYSTEM     1

© CUNA Mutual Group 1998, 99, 2000, 01, 03, 06, 2012 All Rights Reserved

symhehtb

finance charges and other applicable charges due before being applied to your unpaid balance.

7. **CREDIT LIMIT.** You promise not to request or obtain an advance that will make your balance exceed your credit limit. Your credit limit will not be increased if you exceed your credit limit. If you exceed your credit limit, you agree to repay the excess immediately.

8. **ACCESS DEVICES.** You can obtain credit advances in any manner authorized by the Lender from time to time. Specifically, you may obtain credit advances by using Home Equity Line of Credit Checks provided to you for this Account. Your application for this Account also serves as a request to receive any additional access devices which may be available in the future in connection with this Account. The terms of this Agreement will also apply to any future access devices we issue to you for accessing this Account.

9. **COST OF CREDIT.** The finance charge is the cost you pay for credit. Unless described otherwise on the Addendum, the finance charge on each new advance begins on the date of the advance and continues until the advance has been paid in full. There is no "free ride period" which would allow you to avoid a finance charge. We figure the finance charge on your account by applying the periodic rate to the "daily balance" of your Account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your Account each day, add any new purchases or advances and subtract any payments or credits. This gives us the daily balance. The daily balance is multiplied by the applicable periodic rate and that is the finance charge owed for that day. The sum of the daily finance charge for the period identified on your periodic statement is the amount due for that period. The periodic rate and corresponding annual percentage rate are disclosed in the Addendum. Your periodic statement will also reflect your current rate.

10. **ANNUAL PERCENTAGE RATE.** The annual percentage rate for this Account includes only interest and no other costs. The Addendum shows the current interest rate as a periodic rate and a corresponding annual percentage rate. The interest rate for this Account is a variable interest rate. The Addendum explains how the variable interest rate works. If we forego an annual percentage rate increase, we may return to the full index and margin at a later adjustment subject to any rate limitations.

11. **OTHER CHARGES.** In addition to finance charges, your Account is subject to certain other charges as described in this Agreement and the Addendum. The Lender can add any of these other charges to your balance or you can pay them in cash. You may also incur other charges for the servicing of your Account. Servicing charges will be provided to you by the Servicer of your Account prior to the service being rendered. For a list of Servicing Fees, contact the Loan Servicer identified on your periodic statement.

12. **CHARGES TO YOUR ACCOUNT.** We may charge your Account to pay other fees and costs that you are obligated to pay under this Agreement or under the security instrument. In addition, we may charge your Account for funds required for continuing property insurance coverage or costs to protect or perfect our security interest in your property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your property. If you do not pay your property taxes, we may charge your Account and pay the delinquent taxes. Any amount so charged to your Account will be a credit advance. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

13. **LENDER'S RIGHTS:**

   (a) **Termination and Acceleration.** In accordance with applicable law, we can terminate your credit line and require you to pay us the entire outstanding balance in one payment, charge you certain fees, suspend additional extensions of credit, or reduce your credit limit, if any of the following happen:

   *For Wisconsin Borrowers Only:*
   (1) You fail to make a required payment when due two (2) times within a twelve (12) month period, or
   (2) Your failure to observe the terms of this Agreement materially impairs the condition, value or protection of, or our rights in, the property securing this Agreement.

   *For Iowa Borrowers Only:*
   If this transaction is subject to the Iowa Uniform Consumer Credit Code, you will be in default if:
   (1) You fail to make a payment within ten days of the time required by agreement; or
   (2) You fail to observe any other covenant of the transaction, breach of which materially impairs the condition, value or protection of or the Lender's right in any collateral securing the transaction, or materially impairs your prospect to pay amounts due under the transaction.

   *For All Other Borrowers:*
   (1) You engage in fraud or make a material misrepresentation at any time in connection with this Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition, or
   (2) You do not meet the repayment terms of this Agreement, or
   (3) Your action or inaction adversely affects the collateral for this Agreement or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the property, failure to pay taxes, death of all persons liable on the Account, transfer of title or sale of the property, creation of a senior lien on the property without our permission, foreclosure by a prior lienholder, use of the property for prohibited purposes, or taking of the property through eminent domain.

   (b) **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:
   (1) The value of the property securing this Agreement declines significantly below the property's appraised value for purposes of this Agreement. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty (50) percent and may include a smaller decline depending on the individual circumstances.
   (3) We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material change in your

financial circumstances. You are in default of a material obligation of this Agreement. We consider all of your obligations to be material. Before exercising any of our rights under this Agreement, we will mail or deliver a notice of default to you.

(4) We are precluded by government action from imposing the annual percentage rate provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(6) We have been notified by a regulatory authority that continued advances may constitute an unsafe and unsound business practice.

(7) The maximum annual percentage rate under this Agreement has been reached.

(8) *For Wisconsin Borrowers Only:* You engage in fraud or material misrepresentation in connection with the Agreement.

(c) **Change in Terms.**

(1) *For Borrowers Outside of Texas:* We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of this Agreement, or if the change is insignificant (such as changes relating to our data processing systems). We may also change the terms of this Agreement in accordance with other reasons, if stated on the Addendum. If this Agreement follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

(2) *For Borrowers in Texas:* We may make changes to the terms of this Agreement if you agree to the change in writing at that time. If this Agreement follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

14. **USE OF ACCOUNT.** You promise to use your Account only for consumer (personal, family or household) purposes.

15. **MEMBERSHIP IN CREDIT UNION.** If the Lender is a credit union, you must be a member of the credit union to obtain this Account and any credit advances.

16. **CONFLICTING INSTRUCTIONS.** You agree not to provide conflicting instructions to us regarding your Account (such as instructing us not to make credit advances to a joint borrower).

17. **PREPAYMENT AND CURTAILMENT.** You may prepay all or part of what you owe at any time without any prepayment penalty. If you make a curtailment payment, your payment will be applied towards the balance of the Account. However, there will be a holding period of ten (10) calendar days before you may draw upon the credit line in the amount equal to the curtailed amount.

18. **CANCELLATION BY YOU.** You can cancel your right to future credit advances under this Agreement, by notifying us in writing. If this is a joint Account and one of you cancels future credit advances under this Agreement, the cancellation will apply to both of you, unless the Lender gives written notice to one of you that you may continue to obtain advances. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due.

19. **TAX CONSEQUENCES.** You should consult a tax advisor regarding the deductibility of interest and charges under this Account.

20. **STATEMENT AND NOTICES.** You will be provided a periodic statement showing all transactions on your Account during the period covered by the statement. You must provide the Lender and any Loan Servicer current contact information, including but not limited to, address, phone number, and email address. Notice to any one of you will be notice to all.

21. **TRANSFER OR ASSIGNMENT.** You cannot assign your rights and obligations under this Agreement. In spite of any divorce or agreement between joint borrowers, each is responsible for the total amount owed under this Agreement. Subject to applicable law, we reserve the right to sell or transfer this Agreement to another lender, entity or person, and to assign our rights under the security instrument.

22. **UPDATING INFORMATION.** You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Account. You agree that we may obtain credit reports and appraisals at our option. You may be responsible for the cost of the appraisal.

23. **PROPERTY INSURANCE.** You promise to insure the property that secures this Account, in the amount the Lender requires, against fire and other hazards (including flood insurance as required). You may obtain property insurance from anyone you want that is acceptable to the Lender and that is authorized to do business in the state or is an eligible surplus lines insurer. You must name us or our designee as the person to be paid under the policy in the event of a loss. If we request it, you must deliver to us a copy of the policy and proof that the premiums have been paid. We have the right not to accept the insurer for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium to your balance and/or pursue any other remedies available to us.

24. **NO WAIVER.** The Lender can delay enforcing any of its rights under this Agreement without losing any of its rights.

25. **CONTINUED EFFECTIVENESS.** If the law makes any term(s) of this Agreement unenforceable, the other terms will remain in effect.

26. **DUE ON SALE.** You promise to notify the Lender immediately if you enter into an agreement to sell or transfer ownership of all or any part of the property securing this Account. If you sell or transfer ownership without first obtaining the written consent of the Lender, the Lender may exercise its rights described in the security instrument, including the right to demand immediate payment in full of all sums secured by the security instrument.

27. **THE FOLLOWING NOTICE IS REQUIRED BY CALIFORNIA LAW: TRANSFER OF THE PROPERTY.** Subject to applicable law, Lender shall

have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the property or any rights in the property.

28. **NOTICE TO GEORGIA BORROWERS.**

    (b) This is an instrument under seal.

    (c) O,C,G.A. § 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

29. **NOTICE TO UTAH BORROWERS.** This written agreement is a final expression of the agreement between you and the Lender. This written agreement may not be contradicted by evidence of any oral agreement

30. **THE FOLLOWING NOTICE IS REQUIRED BY NEW YORK LAW:** Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written note specifying the circumstances and times under which you can exercise this right.

31. **NOTICE TO WASHINGTON BORROWERS. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

**Georgia's Own Credit Union**  Date 05/03/2024

## BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.** If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay a credit card Account automatically from your share Account or share draft Account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. you do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your statement was correct.

Georgia's Own Credit Union
ION MORTGAGE AND LENDING LLC

Albert Paul Harvey

Georgia's Own Credit Union
100 Peachtree St
Atlanta, GA 30303

HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your Home Equity Line of Credit Agreement and Truth in Lending Disclosure

| OPENING DATE | CREDIT LIMIT | ACCOUNT NUMBER |
|---|---|---|
| May 3, 2024 | $199,800.00 | |

| BORROWER NAME AND ADDRESS | ADDRESS OF PROPERTY SECURING ACCOUNT |
|---|---|
| Elizabeth Naylor<br>Ronald Owens<br>Sarah Owens<br>Christian George Alfonso Navarro<br>11440 N 69th Street<br>Scottsdale, AZ 85254 | 11440 N 69th St<br>Scottsdale, AZ 85254 |

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE | MINIMUM ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| 8.500% | 1.250 % | 9.750 % | 0.027 % | 7.750% |

SCHEDULE OF CLOSING COSTS:

| DESCRIPTION | AMOUNT |
|---|---|
| Lender's Title Insurance | $ 650.00 |

FINANCE CHARGES:

| DESCRIPTION | AMOUNT |
|---|---|
| Lender Origination Fee | $ 450.00 |
| Escrow Fee | $ 380.00 |
| Recording Fee | $ 30.00 |
| Notary Fee (in state) | $ 125.00 |
| Notary Fee (out of state) | $ 150.00 |

PAYMENT INFORMATION: You can obtain credit advances for five (5) years. This period is called the "draw period." At our option, we may renew or extend the draw period. The Minimum Payment will be due monthly. Your minimum monthly payment during the draw period will be the greater of $50 or the amount by which your outstanding principal loan balance exceeds your credit limit (if any), plus the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by your agreement with us. If the account balance is less than the minimum monthly payment, then your monthly payment will equal your account balance. Your minimum payments during the draw period may not reduce the principal balance that is outstanding on your account.

After the draw period ends the repayment period will begin. The length of the repayment period will be twenty five (25) years. The Minimum Payment for the repayment period will be due monthly on the date shown on your periodic statement. At the beginning of the repayment period, we will amortize your outstanding balance at the current annual percentage rate over 300 months. The Minimum Payment amount during the repayment period is the amount necessary to fully amortize the outstanding balance at the beginning of the repayment period (plus interest) over the repayment period. The Minimum Payment during the repayment period also includes the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by your agreement with us. Your Minimum Payment amount and the date it is due will be reflected on your periodic statement. Each time the index increases or decreases, it will cause a change to the annual percentage rate. When the annual percentage rate increases or decreases, we will adjust your Minimum Payment by increasing it or decreasing it in order to repay the balance within the original twenty five (25) years.

The maturity date is the date on which your last payment is due. On the maturity date, you must pay the amount of any outstanding balance remaining on your account. The Minimum Payments may not be sufficient to repay the principal that is outstanding on your account. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon with us, you may have to pay some or all of the closing costs.

GOVERNING LAW (Whichever box is checked will apply)
☒ Federal law and the law of the jurisdiction in which the property is located shall govern this Agreement
☐ Federal law and Maryland law and specifically subtitle 9 of Title 12 of the Commercial Article of the Maryland Code apply to this Agreement.

PERIODIC RATE AND CORRESPONDING ANNUAL PERCENTAGE RATE: This HELOC has a variable rate feature. We will determine the periodic rate and the corresponding annual percentage rate as follows. We start with an independent index, (the "Index"), which is the Wall Street Journal Prime Rate. To determine the periodic rate that will apply to your account, we add a margin, as disclosed above, to the value of the Index. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage

©TruStage Compliance Solutions, 1992, 1999, 2011, 2023

Georgia's Own Credit Union
ION MORTGAGE AND LENDING
Albert Paul Harvey

Page 1 of 4

Powered by Docu Prep Inc. 2024
27069
11/2023

Case 2... Main Document    Page 13 of 18    Desc

rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

If the index changes, the annual percentage rate will change. A change in the annual percentage rate will become effective the day following the day the index changes. There is no limit on the amount by which the annual percentage rate can change during any one (1) year period. The maximum **ANNUAL PERCENTAGE RATE** that can apply is 18% or the maximum permitted by law, whichever is less. However, under no circumstances will your **ANNUAL PERCENTAGE RATE** go below the minimum **ANNUAL PERCENTAGE RATE** as disclosed above.

TRANSACTION REQUIREMENTS: The minimum Credit Limit that we offer is $50,000.00. If you don't qualify for the minimum Credit Limit, your loan application will be denied. The required minimum initial draw is $50,000.00, unless otherwise required by state law. Subsequent draws have no limit unless otherwise required by state law.

OTHER CHARGES:
- Annual Fee: $150.00 annual fee to maintain a line of credit. This fee will be paid to the Servicer following loan closing and annually thereafter during the Draw Period.
- Late Charges: If you make your minimum payment after the due date, you may be assessed a late fee as permitted by state law. The late fee will be assessed as follows: If your payment is more than 10 days late, you will be charged 5% of the minimum payment due.
- Non-Sufficient Funds Fee: You agree to pay a returned check charge of $25.00, or up to the maximum permitted by law, for each check or other instrument tendered as payment under this Agreement and Addendum that is returned or dishonored.

COLLECTION COSTS:

For Borrowers in CO: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees not to exceed 15% of the unpaid debt after termination or acceleration of your account and referral to an attorney not our salaried employee, as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

For Borrowers in DE: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law, you will also pay any court costs.

For Borrowers in GA: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. If collected by or through an attorney, you promise to pay attorney's fees not to exceed 15% of the principal and interest owing as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

For Borrowers in IA: You promise to pay subject to any limits under the Iowa Uniform Consumer Credit Code, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

For Borrowers in ID: You promise to pay, subject to any limits under the Idaho Credit Code, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees paid or to be paid to an attorney who is not our salaried employee, as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law, you will also pay any court costs.

For Borrowers in IL: You promise to pay, subject to applicable law, all costs of collecting what you owe under this agreement or realizing on security including court costs, collection agency fees and reasonable attorney's fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an agreement is reasonable. This provision also applies to bankruptcy, appeals or postjudgment proceedings.

For Borrowers in KS: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings incurred by an individual who is not a salaried employee of the Lender.

For Borrowers in MI: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees as fixed by the court as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

For Borrowers in NE: You promise to pay, except to the extent that our obtaining your agreement to do so is prohibited by applicable law and our enforcing such an agreement may be limited by applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

For Borrowers in NH: You promise to pay, subject to any limits

©TruStage Compliance Solutions, 1992, 1999, 2011, 2023

Georgia's Own Credit Union
ION MORTGAGE AND LENDING LLC
Albert Paul Harvey

Page 2 of 4

Powered by Docu Prep Inc. 2024
27069
11/2023

Case                                                                                                                  Desc
Main Document    Page 14 of 18

under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If, by applicable law, we are permitted to collect attorney's fees from you as part of our costs of collecting under this agreement, then you, to the extent required by New Hampshire Revised Statutes Annotated Chapter 361-C as amended, shall be entitled to reasonable attorney's fees if you prevail in (a) any action, suit or proceeding brought by us, or (b) any action brought by you. If you successfully assert a partial defense or setoff, recoupment or counterclaim to any action brought by us, the court may withhold from us the entire amount or such portion of the attorney's fees as the court considers equitable.

For Borrowers in OK: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees not to exceed 15% of the unpaid debt after termination or acceleration of your account and referral to an attorney not our salaried employee, as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

For Borrowers in SC: You promise to pay, subject to any limits under the South Carolina Consumer Protection Code, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees not to exceed 15% of the unpaid debt upon referral to any attorney who is not our salaried employee, as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings. If not prohibited by applicable law you will also pay any court costs.

For Borrowers in TX: To the extent permitted by law, you promise to pay all reasonable costs and expenses we incur in collecting the amount you owe under this Plan. This includes but is not limited to reasonable attorney's fees.

For Borrowers in WI: Unless this agreement is subject to the Wisconsin Consumer Act you promise to pay all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

For Borrowers in WV: No collection costs.

For Borrowers in AK, AL, AR, AZ, CA, CT, DC, FL, HI, IN, KY, LA, MA, MD, ME, MN, MO, MS, MT, NC, ND, NJ, NM, NV, NY, OH, OR, PA, RI, SD, TN, UT, VA, VT, WA, WY: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or postjudgment proceedings.

The following notice is required by California law: No Lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property.

ADDITIONAL PROVISIONS FOR TEXAS BORROWERS: You and the Lender will sign a written acknowledgement as to the fair market value of the Property described in the Deed of Trust, on the date this Plan is established.

You shall be liable for the indebtedness under this Plan only to the extent of the Property described in the Deed of Trust that secures the payment of this Plan. If you default in the payment of such indebtedness or in your performance under this Plan or the Deed of Trust, any judicial proceedings brought by us against you shall be limited to enforcement and foreclosure of the lien created by the Deed of Trust. If there is foreclosure of such lien, no judgment for any deficiency shall be sought or obtained by us against you. Notwithstanding the foregoing limitation of liability, you shall be fully and personally liable if you or your spouse committed actual fraud in obtaining or in connection with this Plan or any instrument governing, securing or pertaining to the payment hereof.

Except as may be otherwise provided in this Plan or the Deed of Trust securing this Plan, and subject to applicable law, you waive your rights to require us to do certain things. Those things are (A) to give notice of intent to accelerate the maturity date of the outstanding principal balance under this Plan (known as "notice of intent to accelerate"); (B) to demand payment of amounts due (known as "presentment"); (C) to give notice that amounts due have not been paid (known as "notice of dishonor"); (D) to obtain an official certification of nonpayment (known as a "protest").

You and your spouse may within three days after closing rescind this Plan without penalty or charge.
Notwithstanding what is provided in Section 13(c) of this Plan, we may not unilaterally change the terms of this Plan.

HOME EQUITY LINE OF CREDIT ACCESS: We may authorize you to obtain credit advances by writing Home Equity Line of Credit checks that we provide to you for your Account. We reserve the right to reject, decline and return any unpaid check at our discretion, including but not limited to the following circumstances:
  (a) Your Credit Limit has been or would be exceeded by paying the check.
  (b) Your check is post-dated. If a post-dated check is paid and as a result any other check is returned or not paid, we are not responsible.
  (c) Your checks have been reported lost or stolen. You should notify us at once if your checks are lost or stolen.
  (d) Your check is not signed by an "Authorized Signer", which means a person who signed this Agreement, or has

©TruStage Compliance Solutions, 1992, 1999, 2011, 2023

Page 3 of 4

Powered by Docu Prep Inc. 2024
27069
11/2023

Case 2: ▮▮▮▮ Desc
Main Document    Page 15 of 18

signed a separate signature card for the Account.
(e) Your Account has been terminated or suspended as provided in this Agreement.
(f) The amount of your check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement.

If we pay any check under these conditions, you must repay us for the amount of the check and any charges permitted by law. If your check is returned unpaid, we will charge you a fee for that returned check. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in the Agreement is not wrongful dishonor. We may not return the check along with your periodic statements; however, your use of a check will be reflected on your periodic statement as a draw advance. We do not "certify" checks drawn on your account. If you ask us to stop payment on a check, you may be charged a stop payment fee. Home Equity Line of Credit Checks may include an expiration date printed on the check. We will honor checks received for payment before the expiration date printed on the check, provided your Account is open and in good standing, with available credit.

By signing or otherwise authenticating below, you agree that you have read the Addendum and agree to be bound by the terms and conditions contained herein.

_Elizabeth Naylor_ 5-6-24
Elizabeth Naylor / Date

_Sarah Owens_ 5/3/24
Sarah Owens / Date

_Ronald Owens_ 5-6-24
Ronald Owens / Date

_Christian George Alfonso Navarro_ 5/3/24
Christian George Alfonso Navarro / Date

ALDRIDGE PITE, LLP
3333 Camino del Rio South
Suite 225
San Diego CA 92108
Telephone: (858) 750-7600
Facsimile:  (619) 590-1385

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA - PHOENIX DIVISION

| | |
|---|---|
| In re | Case No. 25-BK-07596-PS |
| Elizabeth Ann Naylor and Ronald Stephen Owens, | Chapter 13 |
| Debtor(s). | **PROOF OF SERVICE** |

I, Courtney R. Baker, declare that:

I am employed by Aldridge Pite, LLP.  My business address is: 3333 Camino del Rio South, Suite 225, San Diego CA 92108.   I am over the age of eighteen years and not a party to this cause.

On September 12, 2025, I caused the NOTICE OF MORTGAGE PAYMENT CHANGE to be served in said case by electronic means through the court's CM/ECF system or through United States Mail, addressed as follows: SEE ATTACHED SERVICE LIST.

I declare under penalty of perjury that the foregoing is true.


/s/Courtney R. Baker
COURTNEY R. BAKER

- 1 -
PROOF OF SERVICE

## SERVICE LIST

**DEBTOR(S)**
**(VIA US MAIL)**

Elizabeth Ann Naylor
Ronald Stephen Owens
11440 North 69th Street
Scottsdale, AZ 85254

**DEBTOR(S) ATTORNEY**
**(VIA ELECTRONIC NOTICE)**

Mark R. Atchley

**CHAPTER 13 TRUSTEE**
**(VIA ELECTRONIC NOTICE)**

Edward J. Maney

**UNITED STATES TRUSTEE**
**(VIA ELECTRONIC NOTICE)**

U.S. TRUSTEE